1  Christian Gabroy
   Nev. Bar No. 8805
2  Kaine Messer
   Nev. Bar No. 14240
3  GABROY | MESSER
   The District at Green Valley Ranch
4  170 South Green Valley Parkway
   Suite 280
5  Henderson, Nevada 89012
   Tel:   (702) 259-7777
6  Fax:   (702) 259-7704
   christian@gabroy.com
7  kmesser@gabroy.com
   *Class Counsel*

8

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

9

10  BRENDA BRADY, on behalf of herself   Case No. 2:22-cv-00164-ART-NJK
    and all others similarly situated,

11                                       **JOINT MOTION FOR**
                                         **FINAL APPROVAL OF**
12           Plaintiff,                   **CLASS ACTION SETTLEMENT**

13  vs.                                  Hearing date: January 30, 2025
                                         Hearing time: 11:00 AM
14  CAPTIONCALL LLC; DOES 1 through
    50; inclusive,

15           Defendant.

16

17  ## JOINT MOTION FOR FINAL APPROVAL
    ## OF CLASS ACTION SETTLEMENT

18         Plaintiff Brenda Brady ("Plaintiff"), on behalf of herself and all others

19  similarly situated, and Defendant CaptionCall LLC ("Defendant") (collectively

20  Plaintiff and Defendant may be referred to throughout this Motion as the "Parties")

21  by and through their respective attorneys of record hereby submit this Joint Motion

22  for Final Approval of Class Action Settlement[1] pursuant to Rule 23(e) of the

23  Federal Rules of Civil Procedure and this Court's implementation schedule, ECF

24  No. 33, p. 4, lines 11-13.

25         This Motion is made and based upon the below Memorandum of Points and

26  Authorities, the exhibits attached hereto, other papers and pleadings in this action,

27  ───────────────────

28  [1] Defendant joins in this Motion only to the extent expressly noted herein and to the extent the
    Settlement analyzed herein is ultimately approved by this Court and actually becomes effective.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    all matters upon which judicial notice may be taken, and any oral argument this
2    Honorable Court may entertain.

3    GABROY | MESSER                          BALLARD SPAHR LLP

4
     /s/ Christian Gabroy                      /s/ David E. Chavez
5    Christian Gabroy                          David E. Chavez, Esq.
     Nev. Bar No. 8805                         Nev. Bar No. 15192
6    Kaine Messer                              1980 Festival Plaza Drive
     Nev. Bar No. 14240                        Suite 900
7    170 South Green Valley Parkway            Las Vegas, NV 89135
     Suite 280
8    Henderson, NV 89012                       *Counsel for Defendant*

9    *Class Counsel*

10                   **MEMORANDUM OF POINTS AND AUTHORITIES**

11   **I.    INTRODUCTION**

12         On October 22, 2024, the Court entered the order granting preliminary
13   approval of class action settlement in this matter (the "Preliminary Order," ECF
14   No. 33). In addition to approving the overall settlement (ECF No. 31-1, the
15   "Settlement" or "Agreement"), the Preliminary Order conditionally certified a
16   settlement class, appointed a class representative and class counsel, approved a
17   notice of preliminary approval to class members ("Class Members"), scheduled
18   the final approval hearing, and confirmed the selection of ILYM Group, Inc.
19   ("ILYM") as the claims administrator. *Id.*

20         The class administration procedures ordered by the Court have been
21   completed as summarized in the declaration prepared by Nicole Bench of ILYM.
22   *See* Declaration of Nicole Bench of ILYM Group, Inc. Regarding Notice and
23   Settlement Administration, hereinafter "Bench Dec." or "Bench Declaration,"
24   attached hereto as Exhibit I. The Notice and all related materials ("Notice Packets")
25   were distributed to 1,544 Class Members and deadlines for those Class Members
26   to opt out of or object to the Settlement have passed. *See* Bench Dec. at ¶ 7. No
27   objections were received, and only three of the 1,544 Class Members requested
28   exclusion from the Settlement. *See id.* at ¶¶ 12, 13.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

## II.     SUMMARY OF THE NOTICE AND CLAIMS PROCESS

A summary of the litigation, terms of the Parties' Settlement Agreement, and fairness and adequacy of the Settlement are set forth in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement and the Declaration of Christian Gabroy in support thereof, filed on June 12, 2024, which the Parties incorporate by reference. ECF Nos. 31, 31-2. The upcoming final fairness hearing was set by this Court for January 30, 2025. ECF No. 33, p. 4.

In compliance with the Preliminary Order, on November 7, 2024, Defendant's counsel provided ILYM with the last known addresses of 1,544 settlement class members (the "Class List"). *See* Bench Dec. at ¶ 5. ILYM conducted a National Change of Address ("NCOA") search in an attempt to update the class list of addresses as accurately as possible. *Id*. at ¶ 6. Accordingly, on December 2, 2024, ILYM mailed Notice Packets to 1,544 class members in the form approved by the Court (the "Notice Packet"). *Id.* at ¶ 7. The Notice Packet provided that class members had until January 2, 2025 to submit written exclusions or objections to the settlement. *See* Exhibit A to the Bench Dec. Ultimately, only fifty-six (56) of the Notice Packets were deemed undeliverable. *Id.* at 10.

To date, ILYM has received only three requests for exclusion. *Id.* at ¶ 12. No objections to the Settlement were received by ILYM or counsel. *Id.* at ¶ 13; *see also* Declaration of Christian Gabroy, Esq. attached hereto as Exhibit II ("Gabroy Dec.") at ¶ 11. The largest settlement share is approximately $6,290.76, and the average settlement share is $1,450.22. *See* Bench Dec. at ¶ 18. Class Members stand to receive 39.59% of the net settlement fund of $611,990.73. *Id.* at ¶ 16.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

## III.    ARGUMENT

### A.    The Court Should Grant The Parties' Request For Final Approval Of The Settlement

#### 1.    Standard for final approval of a class action settlement.

Federal Rule of Civil Procedure 23(e) provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Such approval typically involves a two-step process: (1) preliminary approval of the class settlement and notice to all class members and (2) a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate. *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011). A court should approve a class settlement under Rule 23 if it "is fundamentally fair, adequate and reasonable." *See e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

The Court has plenary authority to approve or reject settlements proposed by the parties. *In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citation omitted). Ninth Circuit courts consider the following eight factors to assess whether final approval of a class settlement is warranted: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status through trial; (4) amount offered in settlement; (5) extent of discovery completed and state of the proceedings; (6) experience and views of counsel; (7) whether there is a governmental participant; and (8) reaction of class members to the proposed settlement. *See e.g., Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ninth Circuit courts also consider whether the settlement is a product of fraud or collusion. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

1
2
3
4
5
6

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts are not required to assess whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 (overruled on other grounds).

7

2.    Application of the relevant criteria.

8

a.    *Relative strength of Plaintiff's claims.*

9
10
11
12
13
14

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C-11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. Union Bancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012).

15
16
17
18
19
20
21
22

Plaintiff filed her complaint against Defendant in the Eighth Judicial District Court for the State of Nevada in and for the County of Clark on November 24, 2021. ECF No. 1-1, pp. 2-16. Plaintiff's legal claims stem from her allegation that Defendant maintained an unlawful practice of not paying all daily overtime to Plaintiff and all other similarly situated nonexempt employees who earned less than one and one-half times the applicable minimum wage. *See id.* at pp. 4-5. Defendant removed the matter to the United States District Court for the District of Nevada on or about January 28, 2022. ECF No. 1.

23
24
25
26
27
28

As previously represented to this Court, the Parties met and conferred and agreed it would serve their mutual interests and the interest of judicial economy to commence settlement negotiations before engaging in costly, protracted motion practice and overall litigation. To that end, the Parties engaged in extensive, months-long settlement negotiations which included the disclosure of voluminous and detailed class-wide records and data and intensive review and analysis of

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   same. *See* ECF No. 27, pp. 2-4. The parties also attended multiple mediation

2   sessions presided over by Hon. Elizabeth Gonzalez (Ret.). *Id.*

3       Following such extensive discussions regarding the strengths of their

4   respective positions and with the assistance of the mediator, the Parties reached

5   a proposed class action settlement through arm's-length negotiations. ECF No.

6   31-1.

7       Plaintiff believes her claims are strong but understands that success is far

8   from guaranteed. Plaintiff is cognizant of such factors as the risk that a class

9   might not be certified or might be significantly smaller than proposed, the

10  uncertainty on some of the legal issues, as well as the time, expense, and

11  complexity of further litigation, including the possibility of appellate proceedings.

12  Defendant maintains that it properly paid all wages mandated by Nevada law and

13  denies that it had any policy of denying such wages or overtime to employees, or

14  otherwise engaged in any wrongdoing.

15              *b.    Risk, expense, and complexity of further litigation.*

16      Settlement is preferable to lengthy and expensive litigation with uncertain

17  results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev.

18  Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev.

19  Jan. 18, 2013). Here, continued litigation would have posed considerable risk and

20  would have necessarily involved expensive and lengthy litigation efforts with

21  extensive discovery and complex legal issues. For example, there is an initial risk

22  that a class might not be certified or might be significantly smaller than proposed.

23  And, regardless of how the claims might ultimately be resolved in this Court, it is

24  likely that there would be appellate proceedings to resolve one or more of the

25  complex legal issues driving this action.

26      Furthermore, while Class Counsel believe that Plaintiff's claims are

27  meritorious, they are experienced class action litigators, and understand that the

28  outcome of class certification, trial, and any attendant appeals were inherently

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

uncertain, as well as likely to consume many more months or even years. Continued litigation would have required voluminous written discovery and numerous depositions, as well as extensive motion practice. Having reviewed relevant compensation data and employment information, counsel for the parties—experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process with extensive assistance of the experienced mediator, which continued into all details of the Settlement Agreement and ancillary documents.

Settlement avoids further expense and delay and guarantees a recovery to class members as touched on in factor (a) directly above. Therefore, the risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris*, 2012 WL 6900931, at *7.

c.    <em>Risk of maintaining class status.</em>

As discussed in section III.A.2.a-b, *supra*, Plaintiff faces the risk of not obtaining or maintaining Rule 23 class action status if this litigation proceeds. Thus, this factor, too, favors final approval of settlement.

d.    <em>Benefits conferred by the settlement.</em>

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (that proposed settlement may amount to only a fraction of potential recovery does not mean the proposed settlement is inadequate and should be disapproved).

Here, the gross settlement fund amount of $2,250,000.00 is reasonable when balanced against the possible outcome of further litigation and potential

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

appeals. The largest settlement share is approximately $6,290.76, and the average settlement share is approximately $1,450.22. *See* Bench Dec. at ¶ 18. An estimated 68.7% of the gross settlement amount was made in settlement payments to currently employed and formerly employed class members, which represents a reasonable recovery for the class, even without accounting for the risks that class treatment could be denied or that Defendant would prevail on the merits. *Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) *citing In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.")). Indeed, even after subtracting out costs, third party administrator fees, enhancements, and attorneys' fees and costs, the net class fund of approximately $1,545,750.00 represents over 1 ½ times the actual amount of overtime wages allegedly owed. *See* Gabroy Dec. at ¶ 8. This factor therefore weighs heavily in favor of final approval.

    *e. Extent of discovery completed and stage of the proceedings.*

  This Settlement, following informal discovery and genuine arm's-length negotiation, is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). As discussed in the Parties' Joint Motion for Preliminary Approval, ECF No. 31, the Parties engaged in extensive discussions and informal discovery of the claims and defenses, including reviewing timekeeping and class member data and analyzing the relevant facts and authority as well as attending multiple mediation sessions presided over by Judge Gonzalez. By the time a settlement was reached, the Parties were well versed in the facts and law applicable to the issues and had diligently evaluated the merits of their claims and defenses. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Accordingly, at the time the settlement was

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1  reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their
2  cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.
3  1985). Accordingly, this factor weighs in favor of final approval.

4                   f.      *Experience and views of Plaintiff's Counsel.*

5         Because they are closely acquainted with the underlying litigation,
6  significant "weight is accorded to the recommendation of counsel." *Nat'l Rural*
7  *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.
8  2004) (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125
9  (S.D.N.Y. 1997)). Plaintiff is represented by counsel with broad experience in
10 complex employment litigation. *See* Gabroy Dec. at ¶ 3. Plaintiff's counsel
11 recommends that the Settlement be approved because they believe it is fair,
12 reasonable, and adequate to the proposed class, and because it reflects a
13 reasoned compromise that takes into consideration the inherent risks in all
14 employment class litigation and in particular this action. *See* Gabroy Dec. at ¶ 8,
15 10, 16. Given the experience of the attorneys involved in this litigation, the Court
16 should credit counsel's view that the settlement is fair, reasonable, and adequate.
17 *Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better
18 positioned than courts to produce a settlement that fairly reflects each party's
19 expected outcome). Accordingly, this factor weighs in favor of final approval as
20 well.

21                  g.      *Presence of a governmental participant*

22        There is no governmental participant in this action. As a result, this factor
23 favors final approval of the settlement.

24                  h.      *Reaction of the class.*

25        The absence of any objections to a proposed class action settlement raises
26 a strong presumption that the terms of a proposed settlement are favorable to the
27 class members. *Nat'l Rural*, 221 F.R.D. at 529; *Williams v. Costco Wholesale*
28 *Corp.*, No. 02-cv-2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7,

1    2010). Here, 96.37% of the Notice Packets were successfully mailed. *See* Bench

2    Dec. at ¶¶ 7, 10. As stated, no objections to the settlement were received and

3    only three of the 1,544 Class Members have excluded themselves. *See id. at ¶¶*

4    12, 13. 27.33% of the class members will receive settlement shares. *See id.* at

5    ¶16; *see also Lee v. Enterprise Leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev.

6    2015) (noting 11% rate does not indicate proposed settlement is not fair,

7    reasonable, and adequate given the lack of objections and small number of opt-

8    outs, "does not cast doubt on what appears to be a beneficial settlement for the

9    class members.").

10        These facts suggest approval of the settlement by the class. Therefore, this

11    factor also favors final approval of the settlement. *See Bolton v. U.S. Nursing*

12    *Corp.*, No. C-12-4466 LB, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013)

13    (approving settlement where no objections were filed and two of 1,250 class

14    members requested exclusion from settlement).

15                    i.    *The negotiation process was free from fraud and*
                            *collusion.*
16

17        The Court's inquiry into what is otherwise a private consensual agreement

18    is limited to the extent necessary to reach a reasoned judgment that the

19    agreement is not the product of fraud or collusion between the negotiating parties

20    and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

21    concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 & n.5 (9th Cir. 1996). Here, the

22    Court preliminarily concluded that the settlement was "fair, adequate and

23    reasonable" as to all potential settlement class members. ECF No. 33, p. 1.

24    Nothing has changed to alter that conclusion. The Parties began settlement

25    negotiations only after informally sharing documents and information, analyzing

26    the records, researching the relevant legal issues, analyzing the potential

27    recovery, and ultimately negotiating the settlement with the assistance of the

28    experienced mediator following multiple mediation sessions. Gabroy Dec. at ¶ 6.

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    The Parties acknowledged the risks on the merits and class issues and

2    determined that settlement was sensible to avoid these risks and the time and

3    expense required for further litigation and potential appeals. Gabroy Dec. at ¶ 5-7.

4    Because the Parties were fully informed and engaged in arm's-length

5    negotiations, the Agreement is free from fraud and collusion.

6        In short, under the applicable standards for approval of a class action

7    settlement under Fed. R. Civ. P. 23(e), the Settlement readily meets the

8    standards for final approval.

9    **B**.    **The Claims Administration Expenses Are Reasonable And Should Be Approved.**

10

11       As described in the Bench Declaration, the Parties, through their settlement

12   administrator, successfully implemented the notice procedure approved by the

13   Court. *See generally* Bench Dec. In total, the Claims Administrator has incurred

14   and will incur $14,250.00 in costs in furtherance of the administration of the

15   Settlement. *See* Bench Dec. at ¶ 19. This amount is reasonable and should be

16   approved.

17   **C.**    **The Class Representative Enhancement Award Should Be Approved.**

18

19       "[I]ncentive awards that are intended to compensate class representatives

20   for work undertaken on behalf of a class 'are fairly typical in class action cases.'"

21   *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Here,

22   the Settlement provides for a $15,000.00 enhancement to the lead class plaintiff,

23   which is not excessive. "Incentive awards [as opposed to agreements] are fairly

24   typical in class action cases." *Rodriguez,* 563 F. 3d at 958. The $15,000 award is

25   in line with what is generally awarded in class-action settlements in the Ninth

26   Circuit. *See, e.g., Glass v. UBS Financial Services, Inc., 2007 WL 221862,* at *17

27   (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each of four named

28   plaintiffs for seven months of litigation.); *Van Vranken v. Atl. Richfield Co.,* 901

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to one named plaintiff for 10 years of active litigation).

The enhancement award of $15,000.00 is reasonable in light of the assistance the named plaintiff provided. *See In Lo Re v. Chase Manhattan Corp.*, No. 76 Civ. 154 (MJL), 1979 WL 236, at *6 (S.D.N.Y. May 25, 1979). Specifically, the named plaintiff provided relevant documents to counsel, frequently communicated with counsel by telephone and email, reviewed numerous documents including settlement documents, participated in the negotiation process, provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies and procedures, provided information to assist in the settlement negotiations, and provided information to potential class members about the litigation and settlement administration process. *See* Gabroy Dec. at ¶ 12. Plaintiff also understood that she had an obligation to place the interests of the class as a whole above her own personal interests in an effort to advance the case to a favorable outcome on their behalf. In addition, if the Plaintiff did not prevail, as Class Representative she could have been liable for Defendant's costs.

Furthermore, the Settlement Class Members were notified of the requested enhancement of $15,000.00 for the named plaintiff and none objected. *See In Lo Re*, 1979 WL 236, at *6 (no class member objections indicates approval of enhancement awards). In sum, because of the named plaintiff, this litigation has resulted in a valuable benefit to the settlement class. Thus, the enhancement should be approved.

**D.     Class Counsel's Attorneys' Fees And Costs Should Be Approved.**

1.     Class Counsel's Fee Award Remains Properly Calculated as a Percentage of the Total Settlement Fund.

The Federal Rules of Civil Procedure expressly authorize an award of reasonable attorneys' fees and costs in a certified class action pursuant to the

Parties' agreement or to the extent otherwise authorized by law. *See* Fed. R. Civ. P. 23(h). Nevada wage and hour law, under which Plaintiff brought her claims, specifically provides for an award of attorney's fees. *See* NRS § 608.140; ECF No. 1-1, pp. 2-11. Finally, and out of an abundance of caution, Plaintiff respectfully attests that the below, as well as the attached Declaration of Christian Gabroy, Esq. and as discussed in the Parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF No. 31), fully satisfies all potential considerations of LR 54-14.

Here, and as disclosed in the Notice Packets, Class Counsel's fees and expenses award request remains approximately 30 percent of the gross Settlement Fund. The requested amount is less than the attorneys' fees Plaintiff agreed to pay on a contingency basis (35 percent) and is less still than the market rate of 40 to 50 percent in other types of contingency cases. As explained below and previously, the requested amount remains presumptively fair, reasonable, and appropriate.

a.    Common Fund Fee Structures.

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). This is commonly referred to as the common fund doctrine. The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also State, Dept. of Human Resources, Welfare Div. v. Elcano,* 794 P.2d 725, 726, 106 Nev. 449, 452 (Nev. 1990) (recognizing attorney fee recovery under the common fund doctrine under Nevada law); *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

530, 549, 121 Nev. 837, 864–65 (Nev. 2005) (same). The fairest way to calculate a reasonable fee when contingency fee litigation has produced a common fund—and the way that best promotes efficiency in litigation—is by awarding Class Counsel a percentage of the total fund. *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The "'recognized advantages of the percentage method'" include "'relative ease of calculation,' which reduces the burden on the court, 'alignment of incentives between counsel and the class,' and 'a better approximation of [private] market conditions'" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021); *see also In re Activision Sec. Litig.*, 723 F. Supp. At 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkley*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

1  Accordingly, Class Counsel's requested fees and costs should be analyzed under

2  the common fund doctrine.

3      Indeed, "[w]here a settlement produces a common fund for the benefit of

4  the entire class, courts have discretion to employ either the lodestar method or

5  the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*,

6  654 F.3d 935, 942 (9th Cir. 2011). However, courts have observed that the

7  percentage-of-recovery method is preferable to the lodestar method in common

8  fund cases because: (1) it aligns the interests of Class Counsel and the class;

9  (2) it encourages efficient resolution of the litigation by providing an incentive for

10  early, yet reasonable, settlement; and (3) it reduces the demands on judicial

11  resources. *In Re Activision Securities Litigation*, 723 F.Supp. 1373, 1378-79

12  (N.D. Cal. 1989) (Patel, J.); *see also Third Circuit Task Force Report: Court*

13  *Awarded Attorney Fees*, 108 F.R.D. 237, 255-58 (recommending that the

14  lodestar method be abandoned in all common fund cases). Similarly, as the

15  Ninth Circuit observed in *Bluetooth*, "[b]ecause the benefit to the class is easily

16  quantified in common-fund settlements, we have allowed courts to award

17  attorneys a percentage of the common fund in lieu of the often more time-

18  consuming task of calculating the lodestar." *In re Bluetooth,* 654 F.3d at 942.

19  Under the "common fund" doctrine, "a litigant or a lawyer who recovers a

20  common fund for the benefit of persons other than himself or his client is entitled

21  to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

22  *Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund approach

23  is to "spread litigation costs proportionally among all the beneficiaries so that the

24  active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air*

25  *West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).

26      There are several reasons why the percentage-of-recovery method makes

27  sense from an economic perspective. Notably, contingency fee lawyers work on a

28  mix of cases, and a profit in one case is often necessary to offset a loss in

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

another. *See*, *generally*, *Risks, Reputations and Rewards: Contingency Fee Legal Practice in the United States* by Herbert M. Kritzer (Stanford Law and Politics 2004). "Once one accepts that contingency lawyers are providing a risk sharing service, it becomes paramount to incorporate into the analysis of contingency fee practice frameworks that explicitly consider this element of risk sharing." *Id.* at 16. Not only is the probability for recovery a variable at the time the case is initiated, but the maximum amount of recovery itself is also often unknown. "While much of the literature speaks of going rates and what cases are worth, evidence suggests that case worth is very slippery; it is not even clear that, given complete case files, experts agree to an order of magnitude on what a given case is worth." *Id.* at 17. In addition, "another element of uncertainty concerns the size of the investment the lawyer will make. With certain very specific exceptions, a lawyer can seldom know in advance how much time and effort a particular case will require, because that is largely out of his control." *Id.*

Historically, attorneys' fee awards have ranged from 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6, *supra*; *see also, e.g., In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming award of 33%); *Jane Roe, et al. v. SFBSC Management, LLC, et al.*, 2022 WL 17330847, at *19 (N.D. Cal. 2022) (awarding 33% of common fund). Furthermore, in *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund." *Boeing,* 444 U.S. at 473. The Supreme Court found the total amount of the fund the proper denominator, approving fees of approximately $2,000,000.00 on a settlement valued at $7,000,000.00 where claims totaled $706,600.00 of $1,544,300.00 in unconverted debentures at issue, or 47% of the total.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

Further, the class action process provides for important public policy goals that have long been recognized by the judiciary. United States Supreme Court Justice Douglas reasoned, "The class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186, 94 S. Ct. 2140, 2156, 40 L. Ed. 2d 732 (1974) (Douglas, J, dissenting). This sentiment holds true here, and is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") ("Class actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (citing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)).

Cases such as this rely heavily on the intricate analysis of time and clock data, employee testimony, and actual pay records. Indeed, for low-wage workers, such as Plaintiff and the fellow employees she represents, each fraction of hour or fraction of hourly wage can represent the very real possibility of having to choose between paying the rent on time or going grocery shopping. Furthermore, litigation is time consuming, stressful, usually expensive, and one of the most serious of matters to both plaintiffs and defendants. Here, Plaintiff asserted that Defendant maintained an unlawful policy of not paying all daily overtime to non-exempt hourly employees who earned less than 1 ½ times the applicable minimum wage. *See* ECF No. 1-1, pp. 4-5. This has a very real effect on Plaintiff and the workers

1    she represents and their ability to support themselves. Thus, the character of the

2    work done, its difficulty, intricacy, importance, and effect on the Parties in this

3    litigation support Plaintiff's fees request.

4        Additionally, given these excellent results obtained, no Lodestar

5    crosscheck is necessary. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539,

6    571 (9th Cir. 2019) (no Lodestar crosscheck necessary when the benefit to the

7    class is easily quantified); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

8    942 (9th Cir. 2011). Further, under the percentage-of-recovery method, the Ninth

9    Circuit has held that "(thirty-three percent) for attorneys' fees is justified because

10   of the complexity of the issues and the risks." *In re P. Enterprises Securities Litig.*,

11   47 F.3d 373, 379 (9th Cir. 1995).

                     b.    *Application of Common Fund Structure.*

13       Therefore here, under these principles, a percentage of the common fund

14   fee award remains properly based on the total settlement value of $2,250,000.00

15   in this case. Class counsel's request for 30% of this amount ($675,000.00 per the

16   preliminarily-approved Settlement) is fair compensation for undertaking complex,

17   risky, expensive, and prolonged litigation solely on a contingency basis. *See*

18   Gabroy Dec. at ¶¶ 13, 14. Once again, the request is in line with attorneys' fees

19   awards in other wage-and-hour class actions. *Newberg on Class Actions*, (4th Ed.

20   2002) section 14.6, *supra*. Further, the result remains easily quantified.

21   Specifically, even after subtracting out costs, third party administrator fees,

22   enhancements, and attorneys' fees and costs, the net class fund of approximately

23   $1,545,750.00 nevertheless represents over 1 ½ times—specifically, 165%—the

24   actual amount of overtime wages allegedly owed. *See* Gabroy Dec. at ¶ 8. The

25   exceptional result therefore continues to justify the fee structure preliminarily

26   approved this matter. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998,

27   1020-21 (E.D. Cal. 2019) (recovery of 48% to 80% of estimated gross damages

28   (31% to 51% of estimated net damages) weighed in favor of awarding 33% of

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

common fund); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (recovery of 46% of estimated gross damages, or 29% of estimated net damages supported one-third fee award); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, *19 (C.D. Cal. Jun. 10, 2005) (recovery of 36% of estimated gross damages, or 23% of estimated *net* damages, was an "exceptional result" and supported one-third fee award). Moreover, the notice of preliminary approval provided to class members plainly disclosed that $675,000.00 of the settlement would be allocated to pay attorneys' fees. No class member objected to the settlement in general or the attorneys' fees specifically. This is an overwhelming indication that the attorneys' fees and litigation costs sought are fair, reasonable, and appropriate.

Accordingly, Class Counsel's preliminarily-approved attorneys' fee award should be given final approval.

2.    No Additional Costs and Expenses Are Sought.

In the course of this litigation, class counsel has incurred and expects to incur out-of-pocket costs and expenses of over $6,190.24. However, pursuant to the Agreement preliminarily approved by this Court, Plaintiff does not seek reimbursement of any additional costs and only seeks such 30% fee award as described above.

/ / /

IV.    **CONCLUSION**

Based on the information and reasons provided above, the Parties respectfully request that the Court enter an order granting final approval of the class action settlement.

Date:  January 23, 2025                    GABROY | MESSER

                                           __/s/ Christian Gabroy_____
                                           Christian Gabroy, Esq.
                                           Kaine Messer, Esq.

                                           *Class Counsel*

Date:  January 23, 2025                    BALLARD SPAHR LLP

                                           __/s/ David E. Chavez_____
                                           David E. Chavez, Esq.

                                           *Counsel for Defendant*

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5, I hereby certify that the following parties by electronic means on this 23rd day of January 2025 have been served with this **JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:**

*All parties registered through the Court's CM/ECF system.*

GABROY | MESSER

By:  _/s/ Christian Gabroy____
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
christian@gabroy.com
kmesser@gabroy.com
*Class Counsel*

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704