1  Christian Gabroy
   Nev. Bar No. 8805
2  Kaine Messer
   Nev. Bar No. 14240
3  GABROY | MESSER
   The District at Green Valley Ranch
4  170 South Green Valley Parkway
   Suite 280
5  Henderson, Nevada 89012
   Tel:    (702) 259-7777
6  Fax:    (702) 259-7704
   christian@gabroy.com
7  kmesser@gabroy.com

8  *Class Counsel*

9              **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
10

11  BRENDA BRADY, on behalf of herself     Case No. 2:22-cv-00164-ART-NJK
    and all others similarly situated,
12                                          **RENEWED JOINT MOTION**
              Plaintiff,                    **FOR FINAL APPROVAL OF**
13                                          **CLASS ACTION SETTLEMENT**
    vs.
14
    CAPTIONCALL LLC; DOES 1 through
15  50; inclusive,

16            Defendant.

17          **RENEWED JOINT MOTION FOR FINAL APPROVAL**
                  **OF CLASS ACTION SETTLEMENT**
18

19          Plaintiff Brenda Brady ("Plaintiff"), on behalf of herself and all others

20  similarly situated, and Defendant CaptionCall LLC ("Defendant") (collectively

21  Plaintiff and Defendant may be referred to throughout this Motion as the "Parties")

22  by and through their respective attorneys of record hereby submit this Renewed

23  Joint Motion for Final Approval of Class Action Settlement[1] pursuant to Rule 23(e)

24  of the Federal Rules of Civil Procedure and this Court's February 14, 2025 Minute

25  Order in Chambers, ECF No. 39.

26

27  _____
    [1] As previously, Defendant joins in this Motion only to the extent expressly noted herein and to the
28  extent the Settlement analyzed herein is ultimately approved by this Court and actually becomes
    effective.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

Specifically, following the submission of the parties' previous Joint Motion for Final Approval of Class Action Settlement (ECF No. 34), the final fairness hearing was held on January 30, 2025. *See* ECF No. 36. At the hearing, this Court indicated that all other aspects of the settlement remained fair, adequate, and reasonable but expressed concern regarding the claim rate of participating class members. Plaintiff's counsel therefore suggested a second claim period be commenced to allow another chance for class members to submit claims, and the Court ordered the parties to submit a status report informing the Court of their plans to address the Court's concern. *See* ECF Nos. 36 and 37, p. 2. The parties then filed their Joint Status Report on February 12, 2025, jointly proposing a second claim period be undertaken accordingly. *See* ECF No. 38. The Court approved the parties' plan to proceed with a second 30-day claim period, denied the previous Joint Motion for Final Approval of Class Action Settlement as moot, and instructed the parties to resubmit their joint motion within 30 days of the end of the second claim period. *See* ECF No. 39.

Thus, the second claim period having now concluded and even more individuals having submitted valid claims (the results of which align—and exceed—this matter with previously-approved matters, *see* Paragraph III.A.3.e., *infra*), the parties now respectfully submit this Renewed Joint Motion accordingly and once again thank this Court for its time and attention to this matter as well as for the opportunity to address the Court's concern.

/ / /

This Renewed Joint Motion is made and based upon the below Memorandum of Points and Authorities, the exhibits attached hereto, other papers and pleadings in this action, all matters upon which judicial notice may be taken, and any oral argument this Honorable Court may entertain.

GABROY | MESSER                          BALLARD SPAHR LLP


/s/ Christian Gabroy                      /s/ David E. Chavez
Christian Gabroy                          David E. Chavez, Esq.
Nev. Bar No. 8805                         Nev. Bar No. 15192
Kaine Messer                              1980 Festival Plaza Drive
Nev. Bar No. 14240                        Suite 900
170 South Green Valley Parkway            Las Vegas, NV 89135
Suite 280
Henderson, NV 89012                       *Counsel for Defendant*

*Class Counsel*

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

On October 22, 2024, the Court entered the order granting preliminary approval of class action settlement in this matter (the "Preliminary Order," ECF No. 33). In addition to approving the overall settlement (ECF No. 31-1, the "Settlement" or "Agreement"), the Preliminary Order conditionally certified a settlement class, appointed a class representative and class counsel, approved a notice of preliminary approval to class members ("Class Members"), scheduled the final approval hearing, and confirmed the selection of ILYM Group, Inc. ("ILYM") as the claims administrator. *Id.*

The class administration procedures ordered by the Court have been completed as summarized in the declaration prepared by Nicole Bench of ILYM. *See* Declaration of Nicole Bench of ILYM Group, Inc. Regarding Notice and Settlement Administration, hereinafter "Bench Dec." or "Bench Declaration," attached hereto as Exhibit I. The Notice and all related materials ("Notice Packets") were distributed to 1,544 Class Members and deadlines for those Class Members to opt out of or object to the Settlement have passed. *See* Bench Dec. at ¶ 4. No

1  objections were received, and only five of the 1,544 total Class Members requested

2  exclusion from the Settlement. *See id.* at ¶¶ 6, 7.

3  **II.    SUMMARY OF THE NOTICE AND CLAIMS PROCESS**

4       A summary of the litigation, terms of the Parties' Settlement Agreement,

5  and fairness and adequacy of the Settlement are set forth in the Parties' Joint

6  Motion for Preliminary Approval of Class Action Settlement and the Declaration of

7  Christian Gabroy in support thereof, filed on June 12, 2024, which the Parties

8  incorporate by reference. ECF Nos. 31, 31-2. The final fairness hearing was held

9  on January 30, 2025. *See* ECF No. 36.

10      In compliance with the Preliminary Order, on November 7, 2024,

11  Defendant's counsel provided ILYM with the last known addresses of 1,544

12  settlement class members (the "Class List"). *See* ECF No. 34-1, p. 4 at ¶ 5.  ILYM

13  conducted a National Change of Address ("NCOA") search in an attempt to

14  update the class list of addresses as accurately as possible. *Id.* at ¶ 6.

15  Accordingly, on December 2, 2024, ILYM mailed Notice Packets to 1,544 class

16  members in the form approved by the Court. *Id.* at ¶ 7.

17      Then, in compliance with the Court's February 14, 2025 Minute Order in

18  Chambers (ECF No. 39), on March 7, 2025, ILYM mailed Notice Packets to the

19  1,113 individuals contained in the Class List who had not yet submitted a

20  response to the Settlement in the form approved by the Court. *See* Declaration of

21  Nicole Bench of ILYM Group, Inc. Regarding Notice and Settlement

22  Administration, hereinafter "Bench Dec." or "Bench Declaration," attached hereto

23  as Exhibit I.

24      To date, ILYM has received only five requests for exclusion. *Id.* at ¶ 6. No

25  objections to the Settlement were received by ILYM or counsel. *Id.* at ¶ 7; *see*

26  *also* Declaration of Christian Gabroy, Esq. attached hereto as Exhibit II ("Gabroy

27  Dec.") at ¶ 11. The largest settlement share is approximately $6,326.78, and the

28  average settlement share is $1,279.99. *See* Bench Dec. at ¶ 12. Class Members

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

now stand to receive **55.89%** of the net settlement fund, or $863,991.33. *Id.* at ¶ 10. This is of course an increase from the 39.59% of the net settlement fund, or $611,990.73, that Class Members stood to receive following the initial claim period. *See* ECF No. 34-1, p. 5 at ¶ 16.

## III.    ARGUMENT

### A.    The Court Should Grant The Parties' Request For Final Approval Of The Settlement

#### 1.    Standard for final approval of a class action settlement.

Federal Rule of Civil Procedure 23(e) provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Such approval typically involves a two-step process: (1) preliminary approval of the class settlement and notice to all class members and (2) a final fairness hearing to determine whether the settlement is fair, reasonable, and adequate. *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, at *5 (D. Nev. June 27, 2011). A court should approve a class settlement under Rule 23 if it "is fundamentally fair, adequate and reasonable." *See e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

The Court has plenary authority to approve or reject settlements proposed by the parties. *In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d at 458 (citation omitted). Ninth Circuit courts consider the following eight factors to assess whether final approval of a class settlement is warranted: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status through trial; (4) amount offered in settlement; (5) extent of discovery completed and state of the proceedings; (6) experience and views of counsel; (7) whether there is a governmental participant; and (8) reaction of class members to the proposed settlement. *See e.g., Churchill Village v. Gen.*

GABROY | MESSER

170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

*Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ninth Circuit courts also consider whether the settlement is a product of fraud or collusion. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts are not required to assess whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 (overruled on other grounds).

2.   Application of the relevant criteria.

a.   *Relative strength of Plaintiff's claims.*

In considering the relative strength of plaintiff's claims, courts typically consider decisions relating to the merits of the plaintiff's claims and whether settlement occurs before any substantive motions are decided. *See e.g., Pierce v. Rosetta Stone, Ltd.*, No. C-11-01283 SBA, 2013 WL 5402120, at *3 (N.D. Cal. Sept. 26, 2013); *Odrick v. Union Bancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *3 (N.D. Cal. Dec. 3, 2012).

Plaintiff filed her complaint against Defendant in the Eighth Judicial District Court for the State of Nevada in and for the County of Clark on November 24, 2021. ECF No. 1-1, pp. 2-16. Plaintiff's legal claims stem from her allegation that Defendant maintained an unlawful practice of not paying all daily overtime to Plaintiff and all other similarly situated nonexempt employees who earned less than one and one-half times the applicable minimum wage. *See id.* at pp. 4-5. Defendant removed the matter to the United States District Court for the District of Nevada on or about January 28, 2022. ECF No. 1.

The Parties met and conferred and agreed it would serve their mutual interests and the interest of judicial economy to commence settlement

1  negotiations before engaging in costly, protracted motion practice and overall
2  litigation. To that end, the Parties engaged in extensive, months-long settlement
3  negotiations which included the disclosure of voluminous and detailed class-wide
4  records and data and intensive review and analysis of same. *See* ECF No. 27, pp.
5  2-4. The parties also attended multiple mediation sessions presided over by Hon.
6  Elizabeth Gonzalez (Ret.). *Id.*

7          Following such extensive discussions regarding the strengths of their
8  respective positions and with the assistance of the mediator, the Parties reached
9  a proposed class action settlement through arm's-length negotiations. ECF No.
10 31-1.

11         Plaintiff believes her claims are strong but understands that success is far
12 from guaranteed. Plaintiff is cognizant of such factors as the risk that a class
13 might not be certified or might be significantly smaller than proposed, the
14 uncertainty on some of the legal issues, as well as the time, expense, and
15 complexity of further litigation, including the possibility of appellate proceedings.
16 Defendant maintains that it properly paid all wages mandated by Nevada law and
17 denies that it had any policy of denying such wages or overtime to employees, or
18 otherwise engaged in any wrongdoing.

19                  b.      *Risk, expense, and complexity of further litigation.*

20         Settlement is preferable to lengthy and expensive litigation with uncertain
21 results. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 6900931, at *7 (D. Nev.
22 Dec. 26, 2012) *report and recommendation adopted*, 2013 WL 211085 (D. Nev.
23 Jan. 18, 2013). Here, continued litigation would have posed considerable risk and
24 would have necessarily involved expensive and lengthy litigation efforts with
25 extensive discovery and complex legal issues. For example, there is an initial risk
26 that a class might not be certified or might be significantly smaller than proposed.
27 And, regardless of how the claims might ultimately be resolved in this Court, it is
28 likely that there would be appellate proceedings to resolve one or more of the

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

complex legal issues driving this action.

Furthermore, while Class Counsel believe that Plaintiff's claims are meritorious, they are experienced class action litigators, and understand that the outcome of class certification, trial, and any attendant appeals were inherently uncertain, as well as likely to consume many more months or even years. Continued litigation would have required voluminous written discovery and numerous depositions, as well as extensive motion practice. Having reviewed relevant compensation data and employment information, counsel for the parties—experienced class action litigators well versed in wage and hour law—arrived at a reasonable resolution through a protracted and arm's-length direct negotiation process with extensive assistance of the experienced mediator, which continued into all details of the Settlement Agreement and ancillary documents.

Settlement avoids further expense and delay and guarantees a recovery to class members as touched on in factor (a) directly above. Therefore, the risks associated with further litigation weigh in favor of final approval, consistent with the established policy preferring settlement over further time-consuming litigation. *Harris*, 2012 WL 6900931, at *7.

c.    *Risk of maintaining class status.*

As discussed in section III.A.2.a-b, *supra*, Plaintiff faces the risk of not obtaining or maintaining Rule 23 class action status if this litigation proceeds. Thus, this factor, too, favors final approval of settlement.

d.    *Benefits conferred by the settlement.*

A settlement may be fair and reasonable even if it provides only a fraction of what could have been obtained at trial. *See e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (compromise is essence of settlement); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (that proposed settlement may amount to only a fraction of

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

1   potential recovery does not mean the proposed settlement is inadequate and

2   should be disapproved).

3       Here, the gross settlement fund amount of $2,250,000.00 is reasonable

4   when balanced against the possible outcome of further litigation and potential

5   appeals. The largest settlement share is approximately $6,326.78, and the

6   average settlement share is $1,279.99. *See* Bench Dec. at ¶ 12. An estimated

7   68.7% of the gross settlement amount comprises payments made to currently

8   employed and formerly employed class members, along with class counsel's fees

9   and costs. This represents a reasonable recovery for the class, even without

10  accounting for the risks that class treatment could be denied or that Defendant

11  would prevail on the merits. *Villegas v. JP Morgan Chase & Co.*, No. CV 09-00261

12  SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) *citing In re Mego*

13  *Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law

14  that a cash settlement amounting to only a fraction of the potential recovery does

15  not *per se* render the settlement inadequate or unfair.")). Indeed, even after

16  subtracting out costs, third party administrator fees, enhancements, and attorneys'

17  fees and costs, the net class fund of approximately $1,545,750.00 represents over

18  1 ½ times the actual amount of overtime wages allegedly owed. *See* Gabroy Dec.

19  at ¶ 8. This factor therefore weighs heavily in favor of final approval.

                e.    *Extent of discovery completed and stage of the*

20                      *proceedings.*

21

22      This Settlement, following informal discovery and genuine arm's-length

23  negotiation, is presumed fair. *See City P'ship Co. v. Atlantic Acquisition Ltd.*

24  *P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). As discussed in the Parties' Joint

25  Motion for Preliminary Approval, ECF No. 31, the Parties engaged in extensive

26  discussions and informal discovery of the claims and defenses, including

27  reviewing timekeeping and class member data and analyzing the relevant facts

28  and authority as well as attending multiple mediation sessions presided over by

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1  Judge Gonzalez. By the time a settlement was reached, the Parties were well
2  versed in the facts and law applicable to the issues and had diligently evaluated
3  the merits of their claims and defenses. *See Tijero v. Aaron Bros., Inc.*, 301
4  F.R.D. 314, 324 (N.D. Cal. 2013). Accordingly, at the time the settlement was
5  reached, the Parties "ha[d] a clear view of the strengths and weaknesses of their
6  cases." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.
7  1985). Accordingly, this factor weighs in favor of final approval.

8        *f. Experience and views of Plaintiff's Counsel.*

9    Because they are closely acquainted with the underlying litigation,
10 significant "weight is accorded to the recommendation of counsel." *Nat'l Rural*
11 *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.
12 2004) (quoting *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125
13 (S.D.N.Y. 1997)). Plaintiff is represented by counsel with broad experience in
14 complex employment litigation. *See* Gabroy Dec. at ¶ 3. Plaintiff's counsel
15 recommends that the Settlement be approved because they believe it is fair,
16 reasonable, and adequate to the proposed class, and because it reflects a
17 reasoned compromise that takes into consideration the inherent risks in all
18 employment class litigation and in particular this action. *See* Gabroy Dec. at ¶ 8,
19 10, 16. Given the experience of the attorneys involved in this litigation, the Court
20 should credit counsel's view that the settlement is fair, reasonable, and adequate.
21 *Rodriguez*, 563 F.3d at 967 (parties represented by capable counsel better
22 positioned than courts to produce a settlement that fairly reflects each party's
23 expected outcome). Accordingly, this factor weighs in favor of final approval as
24 well.

25       *g. Presence of a governmental participant*

26   There is no governmental participant in this action. As a result, this factor
27 favors final approval of the settlement.

28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

*h.     Reaction of the class.*

The absence of any objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement are favorable to the class members. *Nat'l Rural*, 221 F.R.D. at 529; *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003 IEG (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010). Here, 96.37% of the Notice Packets were successfully mailed. *See* ECF No. 34-1, pp. 3-4 at ¶¶ 7, 10. As stated, no objections to the settlement were received and only five of the 1,544 Class Members have excluded themselves. *See* Bench Dec. at ¶¶ 6, 7. Following the second claim period, 43.72% of the class members now will receive settlement shares. *See id.* at ¶ 10; *see also Lee v. Enterprise Leasing Co.-West,* 2015 WL 2345540, *7 (D. Nev. 2015) (noting 11% rate does not indicate proposed settlement is not fair, reasonable, and adequate given the lack of objections and small number of opt-outs, "does not cast doubt on what appears to be a beneficial settlement for the class members."). This is of course an increase from the 27.33% that previously stood to receive settlement shares following the initial claim period. *See* ECF No. 34-1, p. 5 at ¶ 16.

These facts suggest approval of the settlement by the class. Therefore, this factor also favors final approval of the settlement. *See Bolton v. U.S. Nursing Corp.*, No. C-12-4466 LB, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections were filed and one of 2,765 class members requested exclusion from settlement).

*i.     The negotiation process was free from fraud and collusion.*

The Court's inquiry into what is otherwise a private consensual agreement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *FDIC v. Alshuler*, 92 F.3d 1503, 1506 & n.5 (9th Cir. 1996). Here, the

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

Court preliminarily concluded that the settlement was "fair, adequate and reasonable" as to all potential settlement class members. ECF No. 33, p. 1. Nothing has changed to alter that conclusion. The Parties began settlement negotiations only after informally sharing documents and information, analyzing the records, researching the relevant legal issues, analyzing the potential recovery, and ultimately negotiating the settlement with the assistance of the experienced mediator following multiple mediation sessions. Gabroy Dec. at ¶ 6. The Parties acknowledged the risks on the merits and class issues and determined that settlement was sensible to avoid these risks and the time and expense required for further litigation and potential appeals. Gabroy Dec. at ¶ 5-7. Because the Parties were fully informed and engaged in arm's-length negotiations, the Agreement is free from fraud and collusion.

### 3.   The Reversionary Aspect of the Settlement

As explored in the parties' February 12, 2025 Joint Status Report (ECF No. 38), although generally disfavored in the Ninth Circuit, reversionary settlement structures have in no way been disallowed. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019). This initially-disfavored view is a result of reversionary settlement structures creating the potential—but not certainty—of collusion and perverse incentive. *Id.* at 1058-1059. Indeed, the Ninth Circuit in *SFBSC Mgmt.* specifically continued "[t]hat is not to say that a reversionary clause can never reasonably be included in a settlement…and any concerns about perverse incentives or collusion may be ameliorated by other aspects of the settlement." *Id.* Such "other aspects" include the value of the claims, incentives for class members to participate, and the actual class member participation. *Id.* at 1059; *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018).

Here, no perverse incentives nor collusion infected the months-long, mediator-presided negotiations. The aspects of the parties' Settlement as well as

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1  the undertaking of a second claim period, as discussed below, confirm this.

2                    *a.    Value of the claims.*

3        The value of the claims here stands in stark contrast to the benefits

4  provided to potential class members in *SFBSC Mgmt.* There, the Ninth Circuit

5  repeatedly noted that the settlement accorded considerable weight to coupons

6  provided to the potential class members which in fact were "worthless."  *SFBSC*

7  *Mgmt., LLC*, 944 F.3d at 1039, 1048, and 1055. Here, by stark contrast, the class

8  members have been offered cash equaling over 165% of their actual overtime

9  damages. *See* Gabroy Dec. at ¶ 8. Thus, the value of the claims evidenced by

10  such exceptional result is a strong indicia in support of final approval.

11                    *b.    Incentives to participate*

12        The class members here had stark incentives to participate—another

13  indicia that the settlement remains fair, reasonable, and adequate. Specifically,

14  the class members were told via the notice that they had to return a claim form in

15  order to receive their payment. The parties attest that the claiming members

16  therefore deserve to receive such payment accordingly and that this class action

17  be given final approval to effectuate such payments. The notice described the

18  claims process and not a single potential class member objected nor contacted

19  class counsel or the administrator with concerns about the notice. Of course, "no

20  notice plan is perfect, but perfection is not required." *Jabbari v. Farmer*, 813 F.

21  App'x 259, 261 (9th Cir. 2020). The high incentive to participate made plain by the

22  terms of the notice therefore continues to support final approval of this settlement.

23                    *c.    Lack of any objections*

24        In addition to all of the considerations above, notably the absence of any

25  objections to a class action settlement further raises a strong presumption that the

26  terms of a proposed settlement are favorable to the class members. *Nat'l Rural*,

27  221 F.R.D. at 529; *Williams v. Costco Wholesale Corp.*, No. 02-cv-2003 IEG

28  (AJB), 2010 WL 2721452, at *5 (S.D. Cal. July 7, 2010). Here, not a single person

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    of the 1,544 potential class members objected following two separate 30-day

2    claim periods. *See* Bench Dec. at ¶ 7. Thus, this alone remains a strong

3    presumption that the proposed settlement is favorable to the class members.

4                    *d.    Presence of neutral mediator*

5         Moreover, although not itself wholly dispositive, the presence of a neutral

6    mediator—in this case Hon. Elizabeth Gonazlez (Ret.)—also weighs in favor of

7    non-collusiveness and therefore approval of the settlement. *See In re Bluetooth*

8    *Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). Here, Judge

9    Gonazlez presided over multiple mediation sessions and worked with the parties

10   extensively between and after such sessions to negotiate a settlement that all

11   sides continue to agree is fair, adequate, and reasonable. This factor supports

12   final approval.

13                   *e.    Similar cases approving reversionary settlement*

14        Finally, many District Courts within our Ninth Circuit have approved class

15   actions settlements inclusive of a reversionary mechanism. *See, e.g., Nur v.*

16   *Tatitlek Support Servs., Inc.*, No. 15:cv-00094-SVWJPRX, 2016 WL 3039573, at

17   *8-11 (C.D. Cal. Apr. 25, 2016) (collecting cases); *Davis v. Brown Shoe Co.*, Inc.,

18   No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *6 (E.D. Cal. Nov. 3, 2015)

19   (recommending final approval where the defendant retained approximately 58% of

20   the unclaimed funds as class members were adequately notified of retention of

21   unclaimed funds, had opportunity to participate, and no objections were filed);

22   *Garcia v. City of King City*, No. 14-cv-01126-BLF, 2017 WL 363257, at *9 (N.D.

23   Cal. Jan. 25, 2017) (reversion approved where product of arm's length

24   negotiations and with assistance of magistrate judge in settlement negotiations);

25   *Mendez v. Tween Brands, Inc.,* No. 2:10-cv-00072-MCE-DAD (E.D. Cal. Aug. 8,

26   2011) (approving settlement where 50% of the net settlement fund reverted to

27   defendant); *Enabnit v. Petsmart, Inc.*, No. 2:07-cv-00165-JAM-DAD (E.D. Cal.

28   Apr. 23, 2009) (approving settlement where 70% of the amount set aside for

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   payment to the class members reverted to defendant); *Brinkmann v. ABM Onsite*

2   *Servs. - W., Inc.*, No. 3:17-cv-275-SI, 2021 WL 3932040, at *15 (D. Or. Sept. 2,

3   2021); *Salazar v. Driver Provider Phoenix LLC*, No. cv-19-05760-PHX-SMB, 2024

4   WL 2923718, at *6 (D. Ariz. June 10, 2024).

5       Indeed, courts within this District have approved reversionary class action

6   settlement mechanisms. *See Zimmerman v. Buddha Entertainment, LLC, et al.*,

7   Case No. 2:18-cv-01460-JAD-CWH (reversionary settlement approved where

8   57% of the net settlement fund was claimed) (Dorsey, J.); *see also Nevett, et al.,*

9   *v. Renown Health*, Case No. 3:21-cv-00319-ART-CSD at ECF Nos. 75-1 and 78

10  therein (this Court recently approving a reversionary settlement where 30% of the

11  net settlement fund had been claimed). This matter, where 55.84% of the net

12  settlement fund has been claimed, now stands nearly in line with *Zimmerman* and

13  far in excess of *Nevett.*

14      This additional consideration therefore further supports the granting of final

15  approval in this matter.

16              4.      Conclusion

17      Overall, under the applicable standards for approval of a class action

18  settlement under Fed. R. Civ. P. 23(e), the Settlement readily meets the

19  standards for final approval.

20  **B**.    **The Claims Administration Expenses Are Reasonable And**
           **Should Be Approved.**
21

22      As described in the Bench Declaration, the Parties, through their settlement

23  administrator, successfully implemented the notice procedure approved by the

24  Court. *See generally* Bench Dec. In total, the Claims Administrator has incurred

25  and will incur $14,250.00 in costs in furtherance of the administration of the

26  Settlement. *See* Bench Dec. at ¶ 13. This amount is reasonable and should be

27  approved.

28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

## C.    The Class Representative Enhancement Award Should Be Approved.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVDRental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Here, the Settlement provides for a $15,000.00 enhancement to the lead class plaintiff, which is not excessive. "Incentive awards [as opposed to agreements] are fairly typical in class action cases." *Rodriguez,* 563 F. 3d at 958. The $15,000 award is in line with what is generally awarded in class-action settlements in the Ninth Circuit. *See, e.g., Glass v. UBS Financial Services, Inc., 2007 WL 221862,* at *17 (N.D. Cal. Jan. 26, 2007) (approving $25,000 enhancement to each of four named plaintiffs for seven months of litigation.); *Van Vranken v. Atl. Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995) (approving $50,000 participation award to one named plaintiff for 10 years of active litigation).

The enhancement award of $15,000.00 is reasonable in light of the assistance the named plaintiff provided. *See In Lo Re v. Chase Manhattan Corp.*, No. 76 Civ. 154 (MJL), 1979 WL 236, at *6 (S.D.N.Y. May 25, 1979). Specifically, the named plaintiff provided relevant documents to counsel, frequently communicated with counsel by telephone and email, reviewed numerous documents including settlement documents, participated in the negotiation process, provided invaluable assistance to Plaintiff's counsel in explaining Defendant's alleged compensation policies and procedures, provided information to assist in the settlement negotiations, and provided information to potential class members about the litigation and settlement administration process. *See* Gabroy Dec. at ¶ 12. Plaintiff also understood that she had an obligation to place the interests of the class as a whole above her own personal interests in an effort to advance the case to a favorable outcome on their behalf. In addition, if the Plaintiff did not prevail, as Class Representative she could have been liable for

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    Defendant's costs.

2         Furthermore, the Settlement Class Members were notified of the requested

3    enhancement of $15,000.00 for the named plaintiff and none objected. *See In Lo*

4    *Re*, 1979 WL 236, at *6 (no class member objections indicates approval of

5    enhancement awards). In sum, because of the named plaintiff, this litigation has

6    resulted in a valuable benefit to the settlement class. Thus, the enhancement

7    should be approved.

8         **D.    Class Counsel's Attorneys' Fees And Costs Should Be**
          **Approved.**

9
                **1.    Class Counsel's Fee Award Remains Properly Calculated as**
10              **a Percentage of the Total Settlement Fund.**

11        The Federal Rules of Civil Procedure expressly authorize an award of

12   reasonable attorneys' fees and costs in a certified class action pursuant to the

13   Parties' agreement or to the extent otherwise authorized by law. *See* Fed. R. Civ.

14   P. 23(h). Nevada wage and hour law, under which Plaintiff brought her claims,

15   specifically provides for an award of attorney's fees. *See* NRS § 608.140; ECF

16   No. 1-1, pp. 2-11. Finally, and out of an abundance of caution, Plaintiff respectfully

17   attests that the below, as well as the attached Declaration of Christian Gabroy,

18   Esq. and as discussed in the Parties' Joint Motion for Preliminary Approval of

19   Class Action Settlement (ECF No. 31), fully satisfies all potential considerations of

20   LR 54-14.

21        Here, and as disclosed in the Notice Packets, Class Counsel's fees and

22   expenses award request remains approximately 30 percent of the gross

23   Settlement Fund. The requested amount is less than the attorneys' fees Plaintiff

24   agreed to pay on a contingency basis (35 percent) and is less still than the market

25   rate of 40 to 50 percent in other types of contingency cases. As explained below

26   and previously, the requested amount remains presumptively fair, reasonable,

27   and appropriate.

28

**GABROY | MESSER**
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

### a.    Common Fund Fee Structures.

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). This is commonly referred to as the common fund doctrine. The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.*" In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see also State, Dept. of Human Resources, Welfare Div. v. Elcano,* 794 P.2d 725, 726, 106 Nev. 449, 452 (Nev. 1990) (recognizing attorney fee recovery under the common fund doctrine under Nevada law); *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549, 121 Nev. 837, 864–65 (Nev. 2005) (same). The fairest way to calculate a reasonable fee when contingency fee litigation has produced a common fund— and the way that best promotes efficiency in litigation—is by awarding Class Counsel a percentage of the total fund. *See, e.g., Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Six Mexican Workers*, 904 F.2d at 1311. The "'recognized advantages of the percentage method'" include "'relative ease of calculation,' which reduces the burden on the court, 'alignment of incentives between counsel and the class,' and 'a better approximation of [private] market conditions'" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021); *see also*

*In re Activision Sec. Litig.*, 723 F. Supp. At 1375 (N.D. Cal. 1989); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Ass'n. v. Dunkley*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a cash settlement fund for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Accordingly, Class Counsel's requested fees and costs should be analyzed under the common fund doctrine.

Indeed, "[w]here a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). However, courts have observed that the percentage-of-recovery method is preferable to the lodestar method in common fund cases because: (1) it aligns the interests of Class Counsel and the class; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In Re Activision Securities Litigation*, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989) (Patel, J.); *see also Third Circuit Task Force Report: Court Awarded Attorney Fees*, 108 F.R.D. 237, 255-58 (recommending that the lodestar method be abandoned in all common fund cases). Similarly, as the Ninth Circuit observed in *Bluetooth*, "[b]ecause the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1   consuming task of calculating the lodestar." *In re Bluetooth,* 654 F.3d at 942.

2   Under the "common fund" doctrine, "a litigant or a lawyer who recovers a

3   common fund for the benefit of persons other than himself or his client is entitled

4   to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

5   *Gemert*, 444 U.S. 472, 478 (1980). The purpose of the common fund approach

6   is to "spread litigation costs proportionally among all the beneficiaries so that the

7   active beneficiary does not bear the entire burden alone." *Vincent v. Hughes Air*

8   *West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).

9       There are several reasons why the percentage-of-recovery method makes

10  sense from an economic perspective. Notably, contingency fee lawyers work on a

11  mix of cases, and a profit in one case is often necessary to offset a loss in

12  another. *See*, *generally*, *Risks, Reputations and Rewards: Contingency Fee Legal*

13  *Practice in the United States* by Herbert M. Kritzer (Stanford Law and Politics

14  2004). "Once one accepts that contingency lawyers are providing a risk sharing

15  service, it becomes paramount to incorporate into the analysis of contingency fee

16  practice frameworks that explicitly consider this element of risk sharing." *Id.* at 16.

17  Not only is the probability for recovery a variable at the time the case is initiated,

18  but the maximum amount of recovery itself is also often unknown. "While much of

19  the literature speaks of going rates and what cases are worth, evidence suggests

20  that case worth is very slippery; it is not even clear that, given complete case files,

21  experts agree to an order of magnitude on what a given case is worth." *Id.* at 17.

22  In addition, "another element of uncertainty concerns the size of the investment

23  the lawyer will make. With certain very specific exceptions, a lawyer can seldom

24  know in advance how much time and effort a particular case will require, because

25  that is largely out of his control." *Id.*

26      Historically, attorneys' fee awards have ranged from 20% to 50% of the

27  common fund, depending on the circumstances of the case. *Newberg on Class*

28  *Actions*, (4th Ed. 2002) section 14.6, *supra*; *see also, e.g., In re Pacific Enters.*

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777 FAX: (702) 259-7704

*Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming award of 33%); *Jane Roe, et al. v. SFBSC Management, LLC, et al.*, 2022 WL 17330847, at *19 (N.D. Cal. 2022) (awarding 33% of common fund). While the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or decrease if warranted in a particular case, *see Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), there is no such benchmark under Nevada law and Plaintiff brings her claims here under state law. *See* ECF No. 1-1, pp. 2-11. Furthermore, in *Boeing*, the Supreme Court specifically addressed "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund." *Boeing,* 444 U.S. at 473. The Supreme Court found the total amount of the fund the proper denominator, approving fees of approximately $2,000,000.00 on a settlement valued at $7,000,000.00 where claims totaled $706,600.00 of $1,544,300.00 in unconverted debentures at issue, or 47% of the total.

Notably, too, the class action process provides for important public policy goals that have long been recognized by the judiciary. United States Supreme Court Justice Douglas reasoned, "[t]he class action is one of the few legal remedies the small claimant has against those who command the status quo." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 186, 94 S. Ct. 2140, 2156, 40 L. Ed. 2d 732 (1974) (Douglas, J, dissenting). This sentiment holds true here, and is comparable to that of the Las Vegas Sands' former casino employees who sought damages for failure to provide a statutorily required 60-day notice before closure:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class member would recover about $1,330. If plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

GABROY | MESSER

170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

1    *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

2    *Inc.,* 244 F.3d 1152, 1163 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395

3    (2001) ("Local Joint Executive Bd.") ("Class actions … may permit the plaintiffs to

4    pool claims which would be uneconomical to litigate individually.") (citing *Phillips*

5    *Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985)).

6        Cases such as this rely heavily on the intricate analysis of time and clock

7    data, employee testimony, and actual pay records. Indeed, for low-wage workers,

8    such as Plaintiff and the fellow employees she represents, each fraction of hour or

9    fraction of hourly wage can represent the very real possibility of having to choose

10    between paying the rent on time or going grocery shopping. Furthermore, litigation

11    is time consuming, stressful, usually expensive, and one of the most serious of

12    matters to both plaintiffs and defendants. Here, Plaintiff asserted that Defendant

13    maintained an unlawful policy of not paying all daily overtime to non-exempt

14    hourly employees who earned less than 1 ½ times the applicable minimum wage.

15    *See* ECF No. 1-1, pp. 4-5. This has a very real effect on Plaintiff and the workers

16    she represents and their ability to support themselves. Thus, the character of the

17    work done, its difficulty, intricacy, importance, and effect on the Parties in this

18    litigation support Plaintiff's fees request.

19        Additionally, given these excellent results obtained, no Lodestar

20    crosscheck is necessary. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539,

21    571 (9th Cir. 2019) (no Lodestar crosscheck necessary when the benefit to the

22    class is easily quantified); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

23    942 (9th Cir. 2011). Further, under the percentage-of-recovery method, the Ninth

24    Circuit has held that "(thirty-three percent) for attorneys' fees is justified because

25    of the complexity of the issues and the risks." *In re P. Enterprises Securities Litig.*,

26    47 F.3d 373, 379 (9th Cir. 1995).

27

28

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

b.    *Application of Common Fund Structure.*

Therefore here, under these principles, a percentage of the common fund fee award remains properly based on the total settlement value of $2,250,000.00 in this case. Class counsel's request for 30% of this amount ($675,000.00 per the preliminarily-approved Settlement) is fair compensation for undertaking complex, risky, expensive, and prolonged litigation solely on a contingency basis. *See* Gabroy Dec. at ¶¶ 13, 14. Once again, the request is in line with attorneys' fees awards in other wage-and-hour class actions. *Newberg on Class Actions*, (4th Ed. 2002) section 14.6, *supra*. Further, the result remains easily quantified. Specifically, even after subtracting out costs, third party administrator fees, enhancements, and attorneys' fees and costs, the net class fund of approximately $1,545,750.00 nevertheless represents over 1 ½ times—specifically, 165%—the actual amount of overtime wages allegedly owed. *See* Gabroy Dec. at ¶ 8. The exceptional result therefore continues to justify the fee structure preliminarily-approved in this matter. *See, e.g., Nevett*, Case No. 3:21-cv-00319-ART-CSD at ECF Nos. 75 and 78 therein (this Court recently approving attorney fee award representing 33-1/3% of common fund); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1020-21 (E.D. Cal. 2019) (recovery of 48% to 80% of estimated gross damages (31% to 51% of estimated net damages) weighed in favor of awarding 33% of common fund); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (recovery of 46% of estimated gross damages, or 29% of estimated net damages supported one-third fee award); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, *19 (C.D. Cal. Jun. 10, 2005) (recovery of 36% of estimated gross damages, or 23% of estimated *net* damages, was an "exceptional result" and supported one-third fee award). Moreover, the notice of preliminary approval provided to class members plainly disclosed that $675,000.00 of the settlement would be allocated to pay attorneys' fees. No class member objected to the settlement in general or

the attorneys' fees specifically. This is an overwhelming indication that the attorneys' fees and litigation costs sought are fair, reasonable, and appropriate.

Accordingly, Class Counsel's preliminarily-approved attorneys' fee award should be given final approval.

2.    No Additional Costs and Expenses are Sought.

In the course of this litigation, class counsel has incurred and expects to incur out-of-pocket costs and expenses of over $6,190.24. However, pursuant to the Agreement preliminarily approved by this Court, Plaintiff does not seek reimbursement of any additional costs and only seeks such 30% fee award as described above.

## IV.    CONCLUSION

Based on the information and reasons provided above, the Parties respectfully request that the Court enter the proposed order granting final approval of the class action settlement being submitted concurrently herewith.

Date:  April 30, 2025                    GABROY | MESSER

                                        __/s/ Christian Gabroy_____
                                        Christian Gabroy, Esq.
                                        Kaine Messer, Esq.

                                        *Class Counsel*

Date:  April 30, 2025                    BALLARD SPAHR LLP

                                        _/s/ David E. Chavez_____
                                        David E. Chavez, Esq.

                                        *Counsel for Defendant*

GABROY | MESSER
170 S. Green Valley Pkwy., Suite 280
Henderson, Nevada 89012
(702) 259-7777  FAX: (702) 259-7704

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5, I hereby certify that the following parties by electronic means on this 30th day of April 2025 have been served with this **RENEWED JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT:**

*All parties registered through the Court's CM/ECF system.*

GABROY | MESSER

By: _/s/ Christian Gabroy_____
Christian Gabroy
Nev. Bar No. 8805
Kaine Messer
Nev. Bar No. 14240
The District at Green Valley Ranch
170 South Green Valley Parkway
Suite 280
Henderson, Nevada 89012
christian@gabroy.com
kmesser@gabroy.com
*Class Counsel*